UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 12-11359-RGS

ANGEL L. ORTIZ

v.

MICHAEL J. ASTRUE,
Commissioner of Social Security

MEMORANDUM AND ORDER ON
APPELLANT'S MOTION TO REVERSE
AND APPELLEE'S MOTION TO AFFIRM
THE DECISION OF THE COMMISSIONER

February 27, 2013

STEARNS, D.J.

Angel Ortiz seeks review of a final decision of the Commissioner of the Social

Security Administration (SSA) adopting the determination of Administrative Law Judge

(ALJ) Sean Teehan that Ortiz was not disabled during the period at issue under the

terms of the implementing regulations of the Social Security Act (Act). *See* 20 C.F.R.

§ 404.1520.

Ortiz filed for Disability Insurance Benefits (DIB) and Supplemental Security

Income payments (SSI) on January 31, 2006. The SSA denied his application initially

and again on reconsideration. Following a hearing on May 12, 2008, ALJ John

Markuns issued a decision determining that Ortiz was disabled for the period between

January 10, 2005, and June 30, 2007, but not thereafter. On May 24, 2010, the Appeals Council affirmed ALJ Markuns' finding of disability between 2005 and 2007, but vacated his decision with respect to the issue of disability after June 30, 2007, and remanded the case for a new hearing to determine whether Ortiz was disabled at any point after that date. On remand, ALJ Sean Teehan found that Ortiz retained the residual functional capacity (RFC) to perform the requirements of unskilled, sedentary work between July 1, 2007, the beginning of the period under review, and September 30, 2010, his date last insured, and therefore was not disabled at any time during that period.[1] The Appeals Council denied review of the decision on May 24, 2012. Ortiz's appeal is properly before this court pursuant to 42 U.S.C. § 405(g). The Commissioner by way of a cross-motion asks that the court affirm the ALJ's decision.

## BACKGROUND

Ortiz was born in 1965 in Puerto Rico. He was 41 years old when he initially filed for benefits. He has a high school education, having attended school until the 12th grade, but dropping out before receiving a diploma. Ortiz's employment history

_____

[1] The Appeals Council mistakenly remanded only Ortiz's claim for DIB and not his concurrent claim for SSI. Because ALJ Teehan did not consider Ortiz's application for SSI benefits, the Appeals Council again remanded the case on May 24, 2012, for a determination of whether Ortiz was disabled after the date last insured of September 30, 2010. This claim has not yet been subject to a final agency decision. Consequently, the only issue before the court is the denial of Ortiz's DIB claim.

consists primarily of jobs requiring heavy lifting, including those of construction worker, packer, and stockroom clerk. He has not been gainfully employed since 2005.

Ortiz now lives with his mother in Cambridge, Massachusetts. Their apartment is on the third floor of the building and he walks up and down three flights of stairs several times each day. He drives to his own appointments and takes his mother, who has leukemia, to her doctor's appointments two to three times each week. He also does the grocery shopping, although he is only able to carry the lighter bags up the stairs, and helps his mother in the laundry room, which is located on the first floor.

Ortiz avoids crowds and spends most of his time at home. Although he used to drink heavily, he reduced his alcohol consumption to two or three beers a week a few months before the 2011 rehearing before the ALJ. Ortiz states that he is troubled by constant back pain. The pain medication he takes to control this pain requires him to lay down frequently and rest during the day. He also states that he now suffers from depression as a result of his inability to work and his obesity, a condition that he developed after his back injury.

**Back Pain**

On January 10, 2005, Ortiz strained his back while lifting heavy boxes at work. He presented for a medical evaluation on January 13, 2005, at Somerville Hospital

3

Emergency Room and was diagnosed with lumbosacral strain with right sciatica. On January 21, 2005, Ortiz underwent a lumbar spine magnetic resonance imaging (MRI) procedure that showed moderate sized posterior central disc herniation at L5-S1 with associated facet joints, hypertorophy, and osteoarthritis. Electromyography (EMG) testing in May of 2005 showed evidence of subacute right L5 and S1 radiculopathy and proximal reinnervation.[2] Ortiz underwent a number of further evaluations in 2005 and was assessed with L5-S1 herniated disc and radiculopathy. Two independent medical examinations by Dr. Joseph Abate and Dr. William Shea found Ortiz to be totally disabled and totally disabled from any type of lifting work.

Ortiz sought treatment for his back condition from Dr. Pano Yeracaris on May 1, 2006. At that time, Ortiz reported chronic back pain, for which he was taking two Vicodin a day. Dr. Yeracaris noted that Ortiz was chronically disabled from central disc herniation at L5-S1. Throughout the remainder of 2006 and 2007, Ortiz continued to report back pain. He also met regularly with Dr. Yeracaris during the period at issue in the rehearing. Ortiz continued to report back pain and the regular use of two Vicodin per day, and in April 2008, reported that his back pain was controlled with the current pain medication regimen. During this visit, Dr. Yeracaris performed a physical

_____

[2] Reinnervation is the restoration of nerve control of a paralyzed muscle or other effector organ by means of regrowth of nerve fibers, either spontaneously or after anastomosis. Stedman's Medical Dictionary (27th ed. 2000).

4

examination on Ortiz that revealed normal reflexes, strength and sensation, but decreased range of motion of the back and a bilaterial positive straight leg raise at eighty degrees. In May 2008, Dr. Yeracaris wrote that he believed Ortiz was unable to work because of his back injury. In October 2008, Dr. Yeracaris performed another physical examination with results similar to those of the April exam. Dr. Yeracaris wrote that Ortiz "has reached a plateau in terms of his recovery and [ ] is likely permanently disabled given the mix of his back pain, L5-S1 lumbar disc history." In a letter prepared following this visit, Dr. Yeracaris also speculated that Ortiz could not work more than three to four hours a day, and that even this was not likely because of his use of Vicodin.

In follow up visits in November and December of 2008, Ortiz's straight leg raise testing results were negative. Although he continued to exhibit decreased range of motion of his back, the straight leg raises were negative again in July of 2009. In November of 2009, however, Ortiz had positive straight raise on his right leg at sixty degrees, and on the left at eighty degrees, but exhibited stable symmetric strength, reflexes, and sensation. At his next test in September of 2010, Ortiz again had negative straight leg raises. In June of 2011, Dr. Yeracaris wrote a letter "to whom it may concern" stating that he believed Ortiz had a complete disability likely to last longer than twelve months and met the criteria of Social Security Listing 1.04A. He wrote two

5

more letters asserting the same conclusion in response to testimony presented at the

rehearing and the adverse decision issued by ALJ Teehan.

**The ALJ Decision**

In following the mandated five-step sequential process,[3] ALJ Teehan first found

that Ortiz met the insured status requirements of the Act through September 30, 2010,

and that he had not engaged in substantial gainful activity during the period in question.

He further found that Ortiz suffered severe impairments in the form of a herniated disc

at L5-S1 with mild narrowing of the neural foramina[4] with right-sided radiculopathy to

the right lower extremity and obesity. Finding at Step 3 that Ortiz's impairments did

---

[3] SSA regulations at 20 C.F.R. § 404.1520(a) establish a five-step protocol that
the ALJ is to follow in determining whether an individual is disabled within the
meaning of the act. The ALJ must first determine whether a claimant is currently
engaged in substantial gainful activity. Next, the ALJ must determine whether the
claimant suffers from a severe impairment limiting his ability to work. If the
impairment is the same as, or equal in its effect to, an impairment (or combination of
impairments) listed in Appendix 1 of Subpart P of the regulations, the claimant is
presumptively deemed disabled. If the impairment is not covered by Appendix 1, the
fourth step of the analysis requires the claimant to prove that his disability is sufficiently
serious to preclude a return to his former occupation. *See Goodermote v. Sec'y of
Health and Human Servs.*, 690 F.2d 5, 6-7 (1st Cir. 1983). Only if he meets that
burden is the Commissioner, at the fifth step, obligated to prove that there are other
jobs in the national economy that the claimant could nonetheless perform. *See
Gonzalez Perez v. Sec'y of Health, Educ. and Welfare*, 572 F.2d 886, 888 (1st Cir.
1978).

[4] A foramen is an aperature or perforation through a bone or a membranous
structure. Stedman's Medical Dictionary (27th ed. 2000).

not meet or equal an entry in the Listing of Impairments in Appendix 1, the ALJ then proceeded with an assessment of Ortiz's residual functional capacity and determined that, although Ortiz was unable to perform any past relevant work, he was able to perform a limited range of sedentary work. The ALJ based his findings at both Step 3 and Step 4 on the testimony of medical expert Dr. Gerald Winkler, a board certified neurologist. Dr. Winkler testified that Ortiz's back condition did not meet or equal Social Security Listing 1.04A, and that Dr. Yeracaris's opinion to the contrary was unsupported by his own treatment notes. Dr. Winkler also gave his assessment of the functional limitations imposed by Ortiz's impairments during the period at issue and opined that Ortiz retained the ability to perform a limited range of sedentary work for an eight-hour workday.

Based on the testimony of a vocational expert, and considering Ortiz's age, education, work experience, and RFC, the ALJ determined that Ortiz was able to perform the requirements of certain unskilled, sedentary occupations such as food and beverage order clerk, charge account clerk, surveillance system monitor, and call out operator, jobs that are available in the national economy. As a result, the ALJ concluded that Ortiz was not disabled at any time between July 1, 2007, and September 30, 2010.

7

## DISCUSSION

Judicial review is limited to determining whether the findings of the Commissioner are supported by substantial evidence. *See* 42 U.S.C. § 405(g); *Manso-Pizarro v. Sec'y of Health and Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). "Substantial evidence . . . means evidence reasonably sufficient to support a conclusion. Sufficiency, of course, does not disappear merely by reason of contradictory evidence . . . . [T]he question [is] not which side [the court] believe[s] is right, but whether [the ALJ] had substantial evidentiary grounds for a reasonable decision . . . ." *Doyle v. Paul Revere Life Ins. Co.*, 144 F.3d 181, 184 (1st Cir. 1998). The Commissioner's findings, however, "are not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999) (per curiam).

Ortiz first challenges the ALJ's ruling that his impairments did not meet or equal an impairment found in the Listing of Impairments. He alleges that, in making this determination, the ALJ erred by relying on the testimony of Dr. Winkler while discounting the testimony of Dr. Yeracaris. Ortiz argues that his back impairment renders him disabled pursuant to Social Security Listing 1.04A. To meet Listing 1.04A, Ortiz is required to show that he has a disorder of the spine, such as a herniated disc, "resulting in compromise of a nerve root . . . or the spinal cord," with:

8

Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine).

Listing 1.04A, 20 C.F.R. Part Four, Subpart P, Appendix 1.

In addition to meeting the elements set out in the Appendix 1, Ortiz must also prove that such condition lasted for a continuous twelve-month period to establish disability under the Act. 42 U.S.C. §§ 416(i)(1), 423(d)(1)(A) (a disability is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months"); 20 C.F.R. §§ 404.1509, 404.1520 ("Unless your impairment is expected to result in death, it must have lasted or must be expected to last for a continuous period of at least 12 months. We call this the duration requirement."; "If you have an impairment(s) which meets the duration requirement and is listed in appendix 1 or is equal to a listed impairment(s), we will find you disabled without considering your age, education, and work experience.").

Ortiz has failed to show that his back impairment meets the criteria listed in 1.04A and, even if it did, that the impairment met the twelve-month durational requirement. As Dr. Winkler testified and the ALJ found, Ortiz suffered from a

9

herniated disc, but did not show any evidence of sensory or reflex loss during the period at issue, which is an additional requirement of 1.04A. It is especially telling that Dr. Yeracaris consistently found that Ortiz demonstrated normal reflexes, strength, and sensation. Notwithstanding the absence of a showing of sensory or reflex loss, Ortiz also did not demonstrate positive straight leg raise test results for a continuous twelve month period.[5] Ortiz's physical examinations, administered by Dr. Yeracaris, yielded negative straight leg raise testing results in November and December of 2008, July of 2009, and September of 2010. Even assuming that Ortiz would have received positive results for all other months in the period at issue, he would not have exhibited positive straight leg results for a continuous period of at least twelve months, as required by Listing 1.04A.

Ortiz's underlying contention that the ALJ should have adopted the conclusions of Dr. Yeracaris, as the treating source, and should have given less weight to those of Dr. Winkler is also flawed. Under SSA regulations, an ALJ is ordinarily to give "more weight" to the opinions of treating physicians, "since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a

---

[5] Ortiz makes much of Dr. Winkler's opinion that positive straight leg raise testing results at eighty degrees of leg elevation is essentially normal. The court need not address this contention because, even if Ortiz's positive results at eighty degrees are deemed abnormal for listing purposes, he still does not meet the requisite durational period.

10

claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations." 20 C.F.R. § 404.1527(d)(2). That being said, the ALJ is not required to give a treating physician's opinion controlling weight. *See Arroyo v. Sec'y of Health and Human Servs.*, 932 F.2d 82, 89 (1st Cir. 1991); *Rodriguez Pagan v. Sec'y of Health and Human Servs.*, 819 F.2d 1, 4 (1st Cir. 1987). If the treating physician's opinion is inconsistent with other evidence in the record, including the opinions of an independent examiner, the conflict is for the Commissioner – and not the court – to resolve. *See Rodriguez v. Sec'y of Health and Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981). This principle is of special force here where Dr. Yeracaris's disability opinions are inconsistent with his own treatment notes. Accordingly, the ALJ did not err in giving "[g]reat weight" to the opinion of Dr. Winkler and "[l]ittle weight" to the opinion of Dr. Yeracaris.[6]

Ortiz also claims that the ALJ erred because his RFC determination was not supported by substantial evidence. Specifically, he alleges that the ALJ failed to adequately consider the effect his use of Vicodin has on his ability to work. Contrary

---

[6] Ortiz also asserts that Dr. Winkler's opinion should be set aside because it is contradicted by other medical evidence in the record. The only medical source who treated Ortiz for his back condition during the period at issue was Dr. Yeracaris. For the reasons noted, the ALJ acted within his discretion in choosing to credit the testimony of Dr. Winkler over the conclusions of Dr. Yeracaris.

11

to Ortiz's contention, the ALJ expressly addressed his testimony that Vicodin makes him drowsy and forces him to lay down. However, as the ALJ noted, Ortiz later corrected his testimony and stated that it was Amitriptyline, not Vicodin, that caused these symptoms, and that he had stopped taking Amitriptyline because of these side effects. Furthermore, although Dr. Yeracaris opined in October of 2008 that Ortiz would be unable to work more than part-time because of the side effects of Vicodin, his treatment notes, confirmed by Ortiz's own testimony, show that Ortiz never reported these side effects. Thus, the ALJ's rejection of Ortiz's claim was properly supported by the record.

## ORDER

For the foregoing reasons, Ortiz's motion to reverse the decision of the Commissioner, or in the alternative to remand the case to a new ALJ, is DENIED. The Commissioner's cross-motion for an order of affirmance is ALLOWED. The Clerk will enter judgment accordingly and close the case.

SO ORDERED.

/s/ Richard G. Stearns

UNITED STATES DISTRICT JUDGE

12